Next case before us this morning is United States v. Alcazar, I believe, which is 23-2004. Counsel for Appellant, if you'd make your appearance and proceed, please. Thank you, Your Honor. My name is Scott Jacobson. May it please the Court, Counsel. In light of the government's withdrawal of its argument on the exhaustion issue, which was issued by a letter to the clerk this Tuesday, I understand the panel has received that. I'd like to focus my remarks this morning on the merits. And I take it you're not going to fight them on the withdrawal of that argument? I thought about it, Your Honor. I decided not to. Okay. All right. I'm always prepared to talk about it if the Court wanted to go down the road. You're not bound by the concession, but I'd like to go on to the merits of this argument. The District Court's denial of compassionate release in this case without an evidentiary hearing is arbitrary and capricious because Ms. Alcazar's specific, particularized allegations in her motion under 3582 improve what are entitled to her to relieve. I thought your evidentiary hearing arguments went to the now withdrawn exhaustion claim. They went to both, Your Honor. Oh, okay. They went to both. Where in the record does it say would support that? I mean, I don't recall anything about your evidentiary hearings arguments relating to anything but exhaustion. Your Honor, they were in the reply brief. Well, reply brief isn't going to cut it. You're talking about in the motion itself in the District Court? Yes. We asked for an evidentiary hearing on the compassion release. Exhaustion. On exhaustion. All right. I understand your position. I'll look at the record. Your Honor, if I could file a 28-J letter just addressing that. The government has not argued that we didn't ask for an evidentiary hearing with respect to the merits. I think it's just the first time it's come up. Yes. Because in the brief, at least my recollection, the argument is that Ms. Alcazar contends that had the District Court granted her an evidentiary hearing, she would have been able to demonstrate that she had exhausted her administrative remedies. At least that's how I understood the argument. That's primarily what the request for an evidentiary hearing argument was about because there was a larger dispute about the facts about what she had done, what the DOP officials had told her, et cetera. But then when we got into the merits of the compassion release, we also talked about how she wanted an evidentiary hearing. So what the District Court did is, as it was reviewing her claims on the merits, it would cast doubt on them, suggesting or implying that they're false. Then concluding on this basis that she failed to meet her burden of proof, they concluded on that basis that there's no need for an evidentiary hearing. What the District Court did in this respect was it put the cart before the horse because it never gave her an opportunity to offer the testimony and to have an evidentiary hearing and go through her ailments. Do you have it available? What portion of the record are you talking about? I don't recall that discussion when the court was talking about the merits. So what are you talking about? You're asking where in the record? Yes, that's what I'm asking. You just cited the fact that the District Court may cast doubt on the defendant's statements about the factual basis for the compassionate release and therefore, but didn't give her a chance for an evidentiary hearing and ruled against her. What I'm saying is I don't recall that. And so if you would tell me where in the record you are referencing to rely upon those statements. It's document 57, which is attached to our opening brief. And it is at page 2 and page 6. Those are several of the references. Okay. And what the court did was it cast doubt on her claims about what she planned to do when she got out, which went to the merits, what it didn't have to do with exhaustion. So the document that you're citing, is it the District Court's opinion? Yes, it is. Okay. Because there was no hearing. That's all we had. Okay. What the court, in effect, did was, well, the District Court can't make adverse credibility findings without an evidentiary hearing. And that's essentially what it did. Now, there are four, with respect to the merits, there are four reasons why the denial of compassionate release was an abuse of discretion here. The first is that she has myriad serious medical conditions. They include obesity, high blood pressure, anemia, hepatitis C, PTSD, borderline diabetes, weakened immune system, manic-depressive disorder, borderline personality disorder, bipolar disorder, amphetamine-related disorder, major depressive disorder, trauma-related mood instability. She, while incarcerated, was found to cut both her wrists horizontally and was placed on suicide watch. She takes 10 different medications, which are listed in, they were in the motion. Her litany of ailments, and even her medications, but her ailments in particular, there's nothing usual, regular, or common about those for a 41-year-old woman. And I thought the BOP treated that differently. And I'm drawing on my recollection now that they classified her physical ailments as being in Category 1 and her mental ailments as being in Category 2, neither of which, under their scheme, was extraordinary. Am I misremembering that? You're not misremembering that. That's correct, Your Honor. And I think if there are going to be disputes as to how severe her medical conditions are, how they relate to risk of serious complications from COVID, et cetera, that's what an evidentiary hearing is for. Well, you are relying a lot on an evidentiary hearing. And I tell you, I'll go back and look, but I don't recall anything like this argument in your briefing. And so let's assume for the moment that the evidentiary hearing argument is at play here. And if so, the burden is on the defendant to establish a basis for compassionate release. And if the court is subject to making clear error findings, why would it have to hold an evidentiary hearing? I mean, even if your conditions are what your conditions are, and the BOP says they're in this category, where is there a disputed fact in that? Well, I would say that in this case, you have to look at all the four different reasons that support compassionate release. I don't think a slice-and-dice approach is appropriate when you're looking at a fatality. Okay, give us two. Okay, number two is she had suffered from three bouts of COVID. She suffered from long-term effects of COVID, despite the vaccines. The first one she had was before the vaccination. That was December 2020. It lasted – Ten days. – according to records, until February 3rd. So she recovered in 10 days from the first round. That's what the government said. And there's – what I recall from looking at the records that were attached, and that are in the record, from the – that were attached – the medical records from the BOP that were attached to the motion for compassionate release was that the medical records show, as of – even up into February 2021, they were still listing complications related to COVID. But that was number one. She got vaccinated in March 2021 and April 2021, so availed herself of that. Then in April 2022, she got COVID again. And then in June of 2022, she got it a third time. The – one of the specific claims that she made in the compassionate release motion is that this caused asthma and shortness of breath for her, and she's suffering from long COVID. These are not usual, regular, or common circumstances. And thus, I think they – to answer your question, Judge Holmes, they go to the question of what's extraordinary about that. So that's number two. – Well, they do. And I'll take your point that we aren't in the business, necessarily, of slicing and dicing these. But if you look at the first two, they fall into, generally, the category of her physical condition, and then the issue related to COVID. Well, we – the cases are legion in our circuit. Granted, most of them unpublished, but nevertheless, suggesting that that just doesn't cut it. I mean, that these health conditions are not what is contemplated by compassionate release. And, I mean, particularly on the second one, when you have taken the vaccine. And so – or, frankly, I think there was one case where the notion that it was available and you could have availed yourself of it. Well, she's availed herself of it. So looking at that constellation, isn't the unpublished case law, anyway, the weight of it, decidedly against an argument, when – I assume you agree we're under an abusive discretion standard, right? – We are under an abusive discretion standard. I haven't seen any case that has her list of medical ailments or said anything close to it. I've seen where they might have one or two of them, and another one might have the third or fourth one, something like that. I've never seen this list of medical ailments in the cases that I've – – Okay, let's flip it, then, and say that under an abusive discretion standard, the burden is on you, right? And where is your case that gives us anything close to the condition she has, where she got – where the relief was given, where the court would have at least been alerted to, boy, this is a circumstance in which one court has held that this is extraordinary. – The standard that the court relied upon is the extraordinary circumstances standard, and the court defined that as not usual, regular, or common. This litany of medical ailments that I just listed for the court is not usual, regular, or common for a 41-year-old woman. I think that's a fact. – I don't think you answered my question. My question is, under an abusive discretion standard, one way you would show that there was an abuse here, that this was an arbitrary decision, is to marshal cases that at least came close to her factual conditions, her health conditions, in which relief was granted. And I don't see anything that you presented to us that shows that. The only cases that exist in the record are ones – I mean, not the record, but that I could find, anyway, in the universe out there of cases pointed against you. And so, I mean, what's your best case that points in your favor, that shows that this constellation of health conditions and COVID should have led – should mean that the court was acting arbitrarily in ruling against you? – Um... You want me to leave? I thought it was the Garcia case. – I think Garcia is what you cite, but I see a big difference there, because in that case, Mr. Garcia had congenitive heart failure and had been in and out of the hospital four times because of heart failure. I mean, we don't have something like that. – We don't have heart failure. That's correct. – Well, we don't have anything that had her having to be rushed to the hospital with some emergency medical condition. And a lot of, as the Chief has pointed out, a lot of the conditions that you're highlighting, we have myriad cases saying it's not an abuse of discretion to deny compassionate relief for these ailments. – Well, I will submit that the combination of her medical ailments plus the psychiatric conditions make the risk of serious long-term effects from COVID significant in her case. And as alleged, she has long-term effects already from the three bouts of COVID that she was not protected from by the BOP, even though she availed herself of a vaccine. – What was number three on your list? – Number three, Your Honor, is that she's a model inmate. She's taken every class she could possibly take. She passed her GED. I believe she's now taking college classes. She's not engaged in any violent or gang-related activity in prison. She's been going through a telemarketing apprenticeship program through Unicor. She's at a low-medium security level. The fourth reason, Your Honor, is that on her release plan, she plans to care for her five children and her elderly father. – Well, she didn't in any way argue that the district court's decision on that issue was wrong in her opening brief to us, so why isn't that waived with respect to her need to care for her children and her father? – If it wasn't in the brief received, then I think it would be waived, Your Honor. – Okay. – If I may reserve the last half a minute. – Yes. – Good morning, Your Honors. May it please the Court, my name is Emil Keeney for the United States Attorney's Office in Albuquerque. I first want to address one point regarding our concession, which is that if you were to agree with Ms. Alcazar on the merits and actually reach the exhaustion issue, which I don't think you have to reach that issue if you agree with us on the merits, but I have not been able to find any circuit court opinion that disagrees with the government's position, and I have found opinions from the Fourth, Fifth, and Sixth Circuits that do agree with our position. – On your position on exhaustion? – On exhaustion, yes, ma'am. – The position that you've articulated in the 28J letter, not the position you had made before that. – Correct. – Okay, well... – So if you did reach it, but I'm sorry, you're going to have to... – Yes, we don't have any binding decision that has ruled in favor of the position, the 28J letter position, right? – That's correct. That's why I was saying that if you did find it necessary to reach that issue at all, if you were to agree with our position, you're not, as far as I can tell, not in any danger of creating any kind of circuit split. That's just what I wanted to say. – Okay, great. And let me just be sure I understand your position. – Yes. – I think I would know what the drift of this would be, but I take it there is no reason we cannot accept the withdrawal of your argument. In other words, this doesn't implicate our jurisdiction in any way, and it's not something we independently have to make a decision on whether there was exhaustion or not, right? – That's correct. – Okay. – In Hemelgarn, the court said it's a mandatory claim processing rule. It is not jurisdictional. I don't see any obstacle to your acceptance of our concession. – All right. Turning to the—I'm sorry, were you finished? – No, yes, ma'am, I was. Thank you. – Turning to the merits, was the failure to hold an evidentiary hearing part of the merits argument? – It was not, Your Honor. If you look at the motion in the district court, there is no mention of an evidentiary hearing on the merits, nor is there one in the reply brief in the district court, nor is there one in counsel's opening brief in this court. It doesn't raise it until the reply brief, and that's why we didn't address it in our answer brief. So there's—counsel has cited some cases for the proposition that, you know, a court should hold an evidentiary hearing in some circumstances, but those cases are all 2255 cases, and Section 28 U.S.C. 2255 specifically states, unless the pleadings the defendant submits conclusively show that no relief is going to be possible, then the district court should hold an evidentiary hearing. – There's no such provision in the First Step Act or Section 3582? – Well, there's sentencing guideline commission guidance, right? – Are you talking about Section 1B.1.13? – 6A.1.3a, when any factor important to the parties is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor. – Right. So I think here, the defendant hasn't even satisfied— even if you were to say that, first of all, the defendant hasn't relied on that provision, but I don't think that imposes an obligation in the First Step Act, or in the 3582 context, an obligation on the district court to hold an evidentiary hearing. And I think the reason for that is that none of these facts are really reasonably in dispute. What the defendant has said is the defendant has attached a number of medical records to the motion in the district court detailing some of these conditions which Ms. Alcazar has. We don't dispute that she has them. But it's a different matter to say she has these conditions and EOP is inadequately treating them. Or she needs care outside the facility. You would need to have some additional— ordinarily, you would need to have some additional evidence, and you could do that by having, say, a nurse review the records and say, look, some of the care is not met in the treatment here. Or EOP's classification levels, Level 1, Level 2, are wrong, and she's actually at a higher level, and she can only get care outside the facility. Something of that nature. And I don't think the district court would abuse its discretion by saying, you know, you've got the vaccine, you have COVID, you've got the vaccine, you have these conditions, but it looks like EOP is managing them. I don't see a reason for your release, at least on the medical ground. Okay, so let me make sure I understand you. You're saying that as it relates to these questions of whether there was inadequate care, the question of whether for some reason we should call into question the BOP's classification of her mental and physical condition, there was nothing presented by the defendant which would have led the district court to believe there was a reasonable dispute about that. In other words, like the affidavit from the nurse that you hypothesized, right? That's correct, Your Honor. Okay. And I'm not saying you have to say that's always necessary. You know, if you analogize this to medical malpractice context, there's certain situations where failure of care is obvious. An extreme example would be where you go in to have a cancer, your left kidney removed because it's cancerous and they take out your right. You don't have to have an expert for that. Or if she had filled out an affidavit saying, they say they care for me on these days, but actually I had no one there. I didn't see a physician at all. They're lying about it. Something like that. I don't think she needs an expert in every situation. But here with this sort of condition, it's not obvious to the layperson, and I'm not to a district court judge that it required release. On the other merits question, which is the care for her family, the district court didn't say much about that. She just said Ms. Alcazar has not proven that her release is necessary. And we analogize that to situations where someone asks for release to care for a relative or a kid in some other context, like a medical context. And this court's cases typically say you have to prove that your release is necessary, that there's no other caregivers possible. Did she challenge the district court's ruling on this issue in her opening brief here? She reasserted her claim and said, I should be released on this ground. But she didn't give any reasons why the district court's decision was wrong. That's correct. OK. And that's why we argue that that's a waiver on that point. But even if you overlook that waiver, there's still just no evidence and no detail about what's going on with her kids. I don't think the district court was obligated to accept those assertions either. Let me just follow up to make sure I understand your position on the colloquy you had with Judgment Q, which I think referenced the sentencing guidelines and a provision of the sentencing guidelines. Do they have a role to play in the First Step Act analysis? In other words, could that have led to some error by the court on the evidentiary hearing front? You know, I'm not sure that it's not something I've looked into since no one had raised that before Judgment Q's question. I think the district court can look to the sentencing guidelines for guidance. I know this court has said you can look to 1B.1.13, which deals with compassionate release. I'm not sure I can say the district court is prohibited from looking to other guidelines. But it's the difference between saying something's prohibited and that you err by not doing it. Right. I don't think there's any investigatory obligation that that provision puts on the district court. I think it's still the burden of the defendant to show that there are issues reasonably in dispute and that an evidentiary hearing is warranted. Your Honor, unless you have any other questions, that's all I have to say. And we would ask that your decision be affirmed. Let me ask you one question before you sit down. About what weight in the analysis of the merits of the compassionate release argument should we give to the rehabilitation efforts, the in-jail, in-prison rehabilitation efforts?  I know that I think Congress has taken the position that rehabilitation itself should not be a stand-alone factor that justifies compassionate release. But I think the qualification there was stand-alone. So do you have a view as to how we should take into consideration her efforts, which I would call rehabilitation related to her good behavior in prison and efforts to upgrade her education? Rehabilitation in the self-improvement sense? Yes. I think that would be relevant to the 3553A factors. That analysis, we don't dispute that either. The district court didn't reach that. But if you were to agree with the defendant that there should be a reversal, then I think the scope of the remand would be to readdress those two. The district court would have to address those factors in the first instance. The district court did not expressly talk about them. Were they litigated before the district court? They were litigated. The district court just didn't decide that issue. She may have mentioned that, I think, in her decision. But she didn't rest it on that basis. Okay. We're not saying she did. Unless there's any other questions, Your Honor. No, thank you. No, thank you, counsel. Mr. Davidson, we'll add one so that you're not in a race.  Thank you, Your Honor. I was able to find some locations of some of these arguments that we were looking for a moment ago. With respect to the waiver argument that Judge McHugh was talking about, the question about whether we waived the issue as to what her plan was afterwards, on page 34 of the briefing, Chief, we argue that in light of all the factors presented to the district court, which were all listed in the briefing, Chief, it was an abuse of discretion for the judge to deny on the merits. So that argument was in the briefing, Chief. The fact section went through specifically all of those, her plan for when she got out, and then later we referred back to it by saying all of the factors, again, looking at it in totality, was abuse of discretion. Yeah, I saw that. But you really think that's adequate? I mean, it didn't in any sense explain why that specific factor, that the court would have treated that wrongly. I mean, and the whole point is you have to tell us what the court did wrong. Right? Well, and again, it's a totality of circumstances analysis. We didn't, in the briefing, Chief, go into that factor because I think of the four factors, that's not particularly unusual or uncommon or irregular. So we were focusing on the ones that were more common. Now, with respect to the, I see that I'm, is it? Yes, you're over, so. If I may have just a couple of seconds to just refer to some of the other. Wrap up in a one-minute deficit, you should end. So go ahead, you've got 15 seconds. Okay. In the briefing, Chief, on pages 28 and 29, we argued that it was an abuse of discretion for the judge to deny an evidentiary hearing on the merits and on exhaustion. And, of course, it was throughout in the reply brief. But it was in the briefing, Chief, on pages 28 and 29. Okay, that's it, Mr. Davidson. Thank you. Thank you, counsel. Case is submitted.